**FILED**

**October 25, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:15 PM**



## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **EDWARD RICHARDS,** | ) | **Docket No.: 2016-01-0212** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 11422-2015** |
| | ) | |
| **KIEWIT POWER CONSTRUCTORS** | ) | |
| **COMPANY,** | ) | |
| **Employer,** | ) | |
| **And** | ) | **Judge: AUDREY A. HEADRICK** |
| | ) | |
| | ) | |
| **ZURICH AMERICAN INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER
## GRANTING MEDICAL BENEFITS

This matter came before the Court on September 30, 2016, on a Request for Expedited Hearing filed by Edward Richards pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Mr. Richards is likely to prevail at a hearing on the merits in proving that Kiewit is liable for medical treatment necessitated by the recurrent hernia he developed while working for another employer. If so, then the question turns to the extent of his entitlement to temporary disability benefits. For the reasons set forth below, the Court holds Mr. Richards is likely to prevail at a hearing on the merits in proving his entitlement to additional medical benefits.[1] However, the Court also holds Mr. Richards is not likely to prevail at a hearing on the merits, at this time, in proving entitlement to additional temporary disability benefits.

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

## History of Claim

On February 15, 2015, Mr. Richards, an electrician, suffered a hernia when lifting heavy wire. Kiewit accepted the claim as compensable.

Mr. Richards initially saw Dr. Donna Van Schuyver, who, after an abdominal ultrasound, diagnosed two mid-line, sub-umbilical, abdominal wall hernias. (Ex. 3.) Noting Mr. Richards' obesity, Dr. Van Schuyver opined, "I can't say that the hernias are due to lifting [a] heavy object at work, however, I can't say that it isn't." (Ex. 4.) After Dr. Van Schuyver's referral of Mr. Richards to a general surgeon, Mr. Richards selected Dr. Claudine Siegert from a panel. (Ex. 3.)

Dr. Siegert diagnosed Mr. Richards with a ventral hernia and performed an open repair with mesh on May 14. (Ex. 5.) The parties agreed that Kiewit laid Mr. Richards off two days after his surgery and paid him temporary disability benefits from May 14, 2015, through June 24, 2015.

On June 10, 2015, Dr. Siegert noted Mr. Richards' surgical incision was "well-healed without any evidence of infection or hernia." (Ex. 5.) However, she provided conflicting instructions regarding Mr. Richards returning to work. Her first instruction directed Mr. Richards to "stay out of work for a total of 6 weeks." *Id.* Dr. Siegert's second instruction directed him to "resume normal activity without restrictions." *Id.* She also encouraged Mr. Richards "to return to normal lifting slowly and gradually to reduce the risk of recurrent hernia." *Id.* Dr. Siegert did not schedule a follow-up appointment and stated Mr. Richards could "return as needed." *Id.*

Beginning in July 2015, Mr. Richards began working numerous, short-term assignments as an electrician. He testified his work as an electrician routinely requires him to lift up to fifty pounds. In January 2016, Mr. Richards started working as an electrician for Emory Electric through a temporary staffing agency. In early February, Mr. Richards testified that he carried a twenty-pound toolbox up two to three flights of stairs and experienced burning and redness. He reported the incident to Emory but did not file a workers' compensation claim.

On February 18, 2016, Mr. Richards returned to see Dr. Siegert and provided the following history:

> He states that he was doing well until about 2 weeks ago when he had to carry his 20 up [sic] 4 flights of stairs since the elevator in the hotel was broken. He had noticed later that night that the area round the previous surgical repair was red, tender and swollen. . . . [A]bout a week later, he had increased burning sensation right at the dome of his previous incision. When he went to palpate the area was in the umbilicus, he felt a 'squishing

2

sensation' and was able to reduce/push in some contents back into his abdominal cavity. He has been able to do this multiple times since that episode, and does continue to have some intermittent pain at that site.

*Id.* Her office note states, "[h]is body habitus and heavy lifting at work," as well as his surgical repair failing in less than a year, put him at a higher risk of recurrence. *Id.* Dr. Siegert also noted that, "it appears that the mesh from the previous placement has pulled away from the inferior aspect of the repair and [he] has had a 'recurrence' at the inferior aspect of his previous hernia." *Id.* Dr. Siegert diagnosed Mr. Richards with an incisional hernia, released him to return to work, and recommended surgical repair of the hernia. *Id.* She further stated that Mr. Richards would remain off work for six to eight weeks following the surgery.

Kiewit sent correspondence to Dr. Siegert asking her to respond to various questions regarding Mr. Richards' prior hernias as well as his new hernia.[2] (Ex. 6.) Dr. Siegert opined the lifting incident at Kiewit in February 2015 "appears to be the cause of the [ventral] hernias." *Id.* When asked if the February 18, 2016 lifting incident was "the primary cause of the 'new' incisional hernia," Dr. Siegert opined as follows:

> Yes. . . . he has a 10% risk of recurrent hernia after repair. Any lifting, straining, pushing or pulling can be associated with a recurrence. The timing of the 'incident' and the observation of a 'new bulge' seem to correlate [with] each other. The 'new' problem is actually a recurring of the original hernia[.]

*Id.* Mr. Richards later sent a letter to Dr. Siegert requesting clarification of her prior responses to Kiewit. Dr. Siegert opined that, "[t]he recurrent hernia is a direct result of having a previous hernia." (Ex. 7.) She also clarified that Mr. Richard was to be off work for six weeks after his May 14, 2015 surgery. *Id.*

The parties did not present any testimony regarding Mr. Richards' work history following the February 18, 2016 incident. However, the parties agreed that Mass Electric hired Mr. Richards on September 7, 2016, and a business relationship of some nature exists between Mass Electric and Kiewit. Mr. Richards testified he remains employed by Mass Electric, though he has not actually worked due to his hernia.

Mr. Richards seeks medical benefits for the recurrent hernia and temporary disability benefits from September 8, 2016, forward. Mr. Richards argued Kiewit did not

---

[2] The Court initially admitted this correspondence for identification purposes only since Dr. Siegert did not sign it. However, the Court permitted defense counsel to verify with Dr. Siegert that the Medical Certification provided with her medical records also included the letter. The Court admits into evidence Dr. Siegert's written confirmation and the letter as Exhibit 6.

overcome the presumption of correctness of Dr. Siegert's opinion that his recurrent hernia is a direct result of his original hernia.

Kiewit argued that the cause of Mr. Richards' recurrent hernia is due to a subsequent, intervening injury that occurred while working for a new employer. Specifically, it argues Dr. Siegert's records show that Mr. Richards carrying a twenty-pound toolbox up several flights of stairs caused his recurrent hernia. Kiewit further argued Mr. Richards did not establish medical causation because Dr. Siegert did not use the "arising primarily" standard. Regarding the issue of temporary disability benefits, Kiewit argues it is entitled to a two-week overpayment it made to Mr. Richards after Dr. Siegert released him on June 10, 2015.

Mr. Richards filed a Petition for Benefit Determination on March 29, 2016. The parties did not resolve the disputed issues through mediation, and the mediator filed a Dispute Certification Notice on May 9, 2016. Mr. Richards filed a request for a hearing, and this Court heard the matter on September 30, 2016.[3]

## Findings of Fact and Conclusions of Law

Mr. Richards bears the burden of proof on all essential elements of his workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). However, he is not required to prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*

As the panel physician, Dr. Siegert's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2015). After receiving correspondence from the parties regarding causation, Dr. Siegert opined that "[t]he 'new' problem is actually a recurring of the original hernia," and she later clarified that "[t]he recurrent hernia is a direct result of having a previous hernia." (Ex. 6 and 7.) Stated another way, Dr. Siegert is opining that Mr. Richards' recurrent hernia is the direct and natural consequence of his February 15, 2015 hernia.

Our Tennessee Workers' Compensation Appeals Board recently addressed the direct and natural consequence rule in *Lee v. Western Plastics, et al.,* No. 2016-06-0912,

---

[3] Following a show cause hearing, Mr. Richards filed an Affidavit requesting a determination of benefits.

2016 TN Wrk. Comp. App. Bd. LEXIS ___ (Tenn. Workers' Comp. App. Bd. Oct. 20, 2016):

> In Tennessee, the general rule is that a "subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the 'direct and natural result' of a compensable injury." *Anderson v. Westfield Grp.*, 259 S.W.3d 680, 696 (Tenn. 2008). (Footnote omitted). "The rule, commonly referred to the as the direct and natural consequences rule, has been stated as: [w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment." *Id.* Therefore, "all the medical consequences and sequelae that flow from the primary injury are compensable." *Rogers v. Shaw*, 813 S.W.2d 397, 400 (Tenn. 1991). "The rationale for the rule is that the original compensable injury is deemed the cause of the damage flowing from the subsequent injury-producing event." *Anderson*, 259 S.W.3d at 697.

*Id.* at slip op. 4.

The limitation on the direct and natural consequence rule is "whether the subsequent injury is the result of independent intervening causes, such as the employee's own conduct." *Anderson*, 259 S.W.3d at 697. Also, "in order for an employee's actions to constitute an independent intervening incident sufficient to break the chain of causation, there must be negligent, reckless, or intentional conduct on the part of the employee." *Lee*, at slip op. 5. Here, there is no evidence to suggest that Mr. Richards acted negligently, recklessly, or intentionally in causing the recurrent hernia. Instead, the medical proof indicates that Mr. Richards' recurrent hernia is a natural consequence of his original work-related hernia. Therefore, the Court holds that Mr. Richards would likely prevail at a hearing on the merits regarding his entitlement to the requested medical treatment.

However, the Court is unable to grant Mr. Richards request for temporary disability benefits. Mr. Richards argued he has not worked since September 6, 2016, due to his recurrent hernia. However, at the last office visit on February 18, 2016, Dr. Siegert documented that she released Mr. Richards to return to work without restrictions. While it is certainly possible that Mr. Richards' work status may have changed after February 18, 2016, no medical records in evidence document the extent of Mr. Richards' disability or its duration. *See generally Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7-8 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015). Therefore, at this time, the Court holds Mr. Richards is not likely to establish at a hearing on the merits that he is entitled to temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Richards' request for medical benefits is granted. Kiewit or its workers' compensation carrier shall authorize him to see Dr. Claudine Siegert for treatment of his recurrent hernia. Mr. Richards or the providers shall furnish Kiewit, or its carrier, bills for the charges incurred for compensable care, and Kiewit or its carrier shall timely pay the charges.

2. Mr. Richards' request for temporary disability benefits is denied at this time.

3. This matter is set for a Status Hearing on January 10, 2017, at 2:00 p.m., Eastern Time.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 25th day of October, 2016.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set on January 10, 2017, at 2:00 p.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note:** <u>**You must call in on the scheduled date/time to participate.**</u> **Failure to call in may result in a determination of the issues without your further participation.**


<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Affidavit of Edward Richards
2. Wage Statement
3. Medical records of American Family Care (Dr. Donna Van Schuyver)
4. Causation response of Dr. Van Schuyver dated March 27, 2015
5. Medical records of Blue Mountain Surgery (Dr. Claudine Siegert)
6. Causation response of Dr. Siegert to correspondence from Sedgwick CMS dated March 31, 2015
7. Causation response of Dr. Siegert to correspondence from Mr. Richards dated September 8, 2016

Technical record:[4]

1. Petition for Benefit Determination, filed March 29, 2016
2. Responding Party's Position Statement in Opposition to the Requesting Party's Request for Benefits, filed April 18, 2016
3. Dispute Certification Notice with additional disputed issues and defenses attached, filed May 9, 2016
4. Show Cause Order, filed August 1, 2016
5. Amended Show Cause Order, filed August 1, 2016
6. Order on Show Cause Hearing, filed August 22, 2016
7. Affidavit of Mr. Richards requesting a hearing, filed August 23, 2016
8. Notice of Expedited Hearing, filed August 25, 2016
9. Motion filed by Mr. Richards requesting leave to participate in Expedited Hearing by telephone, filed September 15, 2016
10. Order granting Mr. Richards' Motion for leave to participate by telephone in Expedited Hearing, filed September 27, 2016

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 25th day of October, 2016.

| Name | Certified Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|
| Edward Richards, Self-Represented | X | | | X | 26 Mountain Brook Drive Candler, NC 28715 mojojoot@att.net |
| Mary Dee Allen, Esq. | | | | X | mallen@wimberlylawson.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

10